# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

In re:

RUSSELL BURLEY NIBLETT,

Debtor.

Case No. 09-12399-RGM
(Chapter 7)

## MEMORANDUM OPINION

THIS CASE is before the court on the chapter 7 trustee's motion to sell property free and clear of liens and interests. Several parties whose goods were in the store and are sought to be sold by the trustee objected. They seek the return of their goods.

Russell Burley Niblett, the debtor, was the sole proprietor of an antique store known as Sackville Galleries. He sold art, furniture, antiques, and other personal property. Some of his inventory was purchased. Other portions are alleged by the trustee to have been consigned to him. Consigned goods in the hands of the consignee (here, the debtor) are subject to all of the claims of the consignee's creditors. Code of Virginia (1950) §8.9A-319(a).[1] The Official Comment to §8.9A-319(a) states:

> Section 9-319(a) provides that, for purposes of determining the rights of certain third parties, the consignee is deemed to acquire all rights and title that the consignor had, if the consignor's security interest is unperfected. The consignee acquires these rights even though, as between the parties, it purchases a limited interest in the goods (as would be the case in a true consignment, under which the consignee acquires only the interest of a bailee). As a consequence of this section, creditors of the consignee can acquire judicial liens and security interests in the goods.

---

[1]Section 8.9A-319(a) states:

*Consignee has consignor's rights.* Except as otherwise provided in subsection (b), for purposes of determining the rights of creditors of, and purchasers for value of goods from, a consignee, while the goods are in the possession of the consignee, the consignee is deemed to have rights and title to the goods identical to those the consignor had or had power to transfer.

1

Official Comment 2 to Code of Virginia (1950) §8.9A-319.

Under §544 of the United States Bankruptcy Code, the trustee has all of the rights of a lien creditor as of the date of the filing of the petition in bankruptcy. *In re Stuckey,* 126 B.R. 697 (Bankr.E.D.Va. 1990). These sections of the Code of Virginia and the United States Bankruptcy Code determine the relative rights of a consignor and a trustee in bankruptcy. The trustee's rights are superior to those of the consignor. The trustee has the right to sell property consigned to a debtor and use the proceeds to pay creditors who file proofs of claims.[2] The question presented in this case is whether the goods delivered to the debtor were held by him on consignment.

Consignment is defined in §8.9A-102(20) of the Code of Virginia (1950). Consignment means:

> a transaction, regardless of its form, in which a person delivers goods to a merchant for the purpose of sale and: (A) the merchant: (i) deals in goods of that kind under a name other than the name of the person making delivery; (ii) is not an auctioneer; and (iii) is not generally known by its creditors to be substantially engaged in selling the goods of others; (B) with respect to each delivery, the aggregate value of the goods is $1,000 or more at the time of delivery; (C) the goods are not consumer goods immediately before delivery; and (D) the transaction does not create a security interest that secures an obligation.

Subsection A is satisfied. The debtor was a merchant dealing in the kind of goods that were delivered to him. He traded under the name of Sackville Galleries, not the names of those delivering goods to him. The debtor was not an auctioneer.

Some of the objecting parties asserted that the trustee did not prove the third element of subsection A of §8.9A-102(20). This requires that creditors not generally know that the debtor is substantially engaged in selling goods of others. It is clear that the business of the debtor was to sell

---

[2]The result would be different if the consignors had filed financing statements. In this case, no financing statements were filed.

2

such goods and that there was no notice that any of the goods in his store were on consignment or owned by anyone other than himself. One objecting party asserts that his goods are identifiable by a colored circle attached to his goods. There is considerable doubt as to the extent that this practice was followed. It was not followed as to all objecting parties and appears, when followed, not to have been consistently followed. A colored circle attached to some inventory can have almost any meaning. It merely identifies the item for some purpose, a purpose not disclosed to creditors or the public. It does nothing to tell creditors that the debtor was selling goods of others and certainly not substantially engaged in selling goods of others. The objecting party misses the point. The colored circles allow him to identify goods be supplied, but gives no notice to creditors as required by §8.9A-102(A)(iii). There is no testimony that the debtor told any of his creditors that he was selling other peoples' goods in his store or that creditors knew this. Based on the nature of the debtor's business, the manner in which he held out the goods for sale, and the lack of any overt notice, the court finds that creditors did not generally know that the debtor was substantially engaged in the business of selling goods of others.

      Section 8.9A-102(20)(A)(iii) requires more than an occasional sale of other parties' goods. Here, the debtor was substantially engaged in this activity. The property the objecting parties seek to have returned to them is substantial and constitutes a large portion of the debtor's inventory, both in volume and value. The court also takes note of the testimony that one effect of delivering goods to the debtor was to make his shop look more appealing to prospective purchasers. This testimony suggests that but for the additional goods, the store would not have been well stocked.

      The second subsection, §8.9A-102(20)(B), is also satisfied. Except for Janet A. Thomas, the evidence supports the finding that the aggregate value of the goods of each delivery exceeded $1,000

3

at the time of delivery. The objecting parties delivered substantial goods to the debtor. There is no satisfactory evidence that any particular delivery had a value of less than $1,000.

Subsection C is satisfied as to all of the objecting parties except Ms. Thomas. All others acknowledge that they are in the trade or business of buying and selling antiques. The goods in their hands immediately before delivery were inventory, not consumer goods. Ms. Thomas' claim is different. Her claim is for an oil painting purchased by her daughter, Alexis Thomas Lloyd, on April 1, 2005, for $997.50 from Sackville Galleries. Ms. Lloyd later asked her mother, Ms. Thomas, to return the painting to Sackville Galleries for resale. The trustee encounters two problems with respect to this transaction. The first is that it is not clear that when the painting was delivered to the debtor that it was worth $1,000 or more. It is known that on April 1, 2005, it was worth $997.50. That is the price that Ms. Lloyd paid for the painting. However, the evidence is ambiguous as to the value as of the date it was delivered to the debtor for resale. In addition, the painting in the hands of Ms. Lloyd was a consumer good. Consumer goods are defined in §8.9A-102(23) of the Code of Virginia (1950). A consumer good is a good that is used or bought for use primarily for personal, family, or household purposes. There are four mutually exclusive categories of goods: consumer goods, equipment, farm products and inventory. All goods are classified as only one of the four at any particular point in time. In the debtor's hands, the painting was inventory. However, the definition of consignment looks to the nature of the goods "immediately before delivery". Ms. Lloyd owned the painting and presumably displayed it in her home. This is a personal use. There is no indication that she was a dealer in antiques, paintings, or artworks or that she held it for investment or resale. The fact that Ms. Lloyd asked her mother, Ms. Thomas, to take the painting to the debtor does not change the ownership of the painting or the nature of the transaction. Even

though it was intended to be sold on consignment, it does not satisfy the definitional requirements of §8.9A-102(20) because it was a consumer good in Ms. Lloyd's hands immediately before delivery and the court cannot conclude from the evidence presented that it was worth $1,000 or more when delivered to the debtor for resale.

Some of the objecting parties argue that the goods were not delivered to the debtor for sale. They assert that they were delivered for storage. They point to the fact that some of the goods were not on the sales floor but were rather in a basement area that was not accessible to the public. The Virginia Code does not require consigned goods to be on the sales floor. They may be held in a storage facility, a warehouse, or elsewhere on the business premises out of sight of the general public. Where they are held or how they are displayed is not itself determinative of whether the goods were delivered for sale. It may be evidence of whether the parties intended to merely store the goods or to sell them. It is not necessary that consigned goods be held in public view on the sales floor. Here, it appears that the goods not on the sales floor were available for sale. If a customer requested or showed interest in an item not on the sales floor, it was immediately available to be brought up and shown. The goods were also available to replenish the sales floor as items were sold. The objecting parties also assert that the debtor did not have the ability to sell the goods without their consent and that he sought their approval before he sold some of the goods. Consignments can be formed with restrictions. They do not necessarily vest unfettered discretion in the consignee as to the terms of sale. In many instances, there will be a minimum price agreed by the consignor and consignee. The fact that the debtor sought the permission of the consignors to sell an item or to sell it at a particular price does not change the essential nature of the transaction. It only reflects a limitation on the debtor's authority. The goods were available for sale by the

5

debtor. Section 8.9A-319(A) of the Code of Virginia (1950) provides that the consignee has all of the rights of the consignor even if, as between the consignor and consignee, the consignee's rights are limited.

It is also argued that this was a sale or return transaction under §8.2-326 of the Code of Virginia (1950) not a consignment. "A sale or return" and a "sale on approval" are similar but distinct types of transactions. Official Comment 1 to §8.2-326 states:

> Both a "sale on approval" and "sale or return" should be distinguished from other types of transactions with which they frequently have been confused. A "sale on approval," sometimes also called a sale "on trial" or "on satisfaction," deals with a contract under which the seller undertakes a risk in order to satisfy its prospective buyer with the appearance or performance of the goods that are sold. The goods are delivered to the proposed purchaser but they remain the property of the seller until the buyer accepts them. The price has already been agreed. The buyer's willingness to receive and test the goods is the consideration for the seller's engagement to deliver and sell. A "sale or return," on the other hand, typically is a sale to a merchant whose unwillingness to buy is overcome only by the seller's engagement to take back the goods (or any commercial unit of goods) in lieu of payment if they fail to be resold. A sale or return is a present sale of goods which may be undone at the buyer's option. Accordingly, subsection (2) provides that goods delivered on approval are not subject to the prospective buyer's creditors until acceptance, and goods delivered in a sale or return are subject to the buyer's creditors while in the buyer's possession.
>
> These two transactions are so strongly delineated in practice and in general understanding that every presumption runs against a delivery to a consumer being a "sale or return" and against a delivery to a merchant for resale being a "sale on approval."

The evidence does not support "a sale or return" transaction. There is no evidence of an obligation to pay for the goods. There was no evidence of an invoice being prepared, sent or paid. No terms of a "sale or return" were established, such as the time period within which the goods could be returned. There was a limited time period for the consignment, but the goods were never returned even though the time had expired.

6

The court is aware of the disappointment to the consignors and their very real economic loss. The law, however, determines the rights between parties and expressly addresses the rights between consignors and consignees and between consignees and their creditors. The essential idea of the law is that if a merchant holds out inventory as his inventory, creditors have a right to rely on the implied representation that the inventory is his inventory. Their transaction may well be founded at least in part on the assumption that the inventory has value and may be available to satisfy their claims. A consignor can protect himself by filing a financing statement. A creditor or prospective creditor cannot protect himself because the knowledge of the consignment is not publicly known.

The court concludes that the transactions were consignments. The trustee's motion to sell property in the debtor's store will be granted with the exception of the painting delivered by Ms. Thomas.

Alexandria, Virginia
November 18, 2009

/s/ Robert G. Mayer
Robert G. Mayer
United States Bankruptcy Judge

Copy electronically to:

Ronald W. Stern
Donald F. King
James W. Reynolds
Alan Rosenblum
Roy Tesler

15617